DECISION. *Page 2 
 I. Facts and Procedure {¶ 1} After the trial court overruled his motion to suppress, plaintiff-appellant, Curtis Burton, pleaded no contest to two counts of trafficking in cocaine under R.C. 2925.03(A)(1) and (A)(2) and one count of possession of cocaine under R.C. 2925.11(A). The trial court sentenced him to four years' imprisonment on each count, to be served concurrently. This appeal followed.
 {¶ 2} The record shows that Cincinnati Police Officer Mark Bode received information from a confidential informant that Burton was selling drugs. The informant had been purchasing drugs from Burton for over a year and had informed the police that Burton would have drugs to sell on a particular day.
 {¶ 3} Bode was present in a car that the informant and another individual drove to a residence at 3146 Gloss Avenue, Letter A. Burton's girlfriend lived at the residence. Bode was hiding in the trunk and could bend the back seat so that he could see into the front of the car and through the driver's side window. He saw Burton come to the driver's side of the car and exchange drugs and money with the informant through the open window. Burton sold the informant $660 worth of powdered cocaine.
 {¶ 4} Subsequently, Bode submitted a search warrant with a supporting affidavit to a judge, and he was present when the judge signed the warrant. The warrant and the supporting affidavit listed the property to be searched as "3146 #A Gloss Avenue, Cincinnati Ohio, 45207." Bode testified that the property was located on the boundary between Kennedy Heights and Pleasant Ridge in Cincinnati. He stated that he usually checked information from the Hamilton County Auditor for zip codes. But since *Page 3 
he was familiar with the area, he used the zip code for Kennedy Heights, which was 45207. The property was actually in Pleasant Ridge and the correct zip code was 45213.
 {¶ 5} Bode was present when the police executed the search warrant and took Burton into custody. He walked Burton out to a police car and interviewed him there. He said that he read Burton his rights underMiranda v. Arizona, [1] and that Burton seemed to understand them. Burton told Bode that the drugs police had found in the residence were his, not his girlfriend's, and that she was not involved in any drug activity.
 {¶ 6} In this appeal, Burton presents four assignments of error for review. We find one of them to have merit. Consequently, while we affirm the findings of guilt, we vacate the sentences imposed and remand the case for resentencing.
 II. Burton's Statement to Police {¶ 7} In his first assignment of error, Burton contends that the trial court erred in overruling his motion to suppress his statements to the police. He argues that he did not voluntarily waive his Miranda rights and that his confession was involuntary. This assignment of error is not well taken.
 {¶ 8} Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard.[2]
 {¶ 9} This assignment of error involves two distinct issues: (1) whether Burton knowingly, intelligently and voluntarily waived hisMiranda rights; and (2) whether he made his statement to the police voluntarily under the Due Process Clause of *Page 4 
the United States Constitution. We analyze both issues using a totality-of-the circumstances test.[3]
 {¶ 10} We begin with the Miranda analysis. The state bears the burden to prove by a preponderance of the evidence that the accused made a knowing, voluntary, and intelligent waiver of his Miranda rights. Courts will not presume a waiver just because the accused responded to the interrogation.[4]
 {¶ 11} A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne or that his capacity for self-determination was critically impaired because of coercive police misconduct[5] "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law."[6]
 {¶ 12} Under the due-process analysis, the prosecution must prove by a preponderance of the evidence that a confession was voluntary.[7] "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."[8] *Page 5 
Coercive police activity is necessary to a finding that a confession was involuntary within the meaning of the Due Process Clause.[9]
 {¶ 13} We cannot hold that Burton's statements were the result of coercive police conduct. At the time of the interrogation, Burton was 31 years old and had a substantial criminal record. Bode testified that he had read Burton his rights and that Burton, who did not appear to be under the influence of drugs or alcohol, had understood them. He also testified that the interrogation had lasted approximately five to ten minutes. Bode did not make any promises or engage in coercive behavior. He did suggest the possibility of charging Burton's girlfriend for permitting drug abuse. Burton immediately stated that the drugs were his and that his girlfriend was not involved. This tactic was not coercive because Bode had probable cause to believe that Burton's girlfriend had committed an offense, and it did not render Burton's statements involuntary.[10]
 {¶ 14} In sum, the record shows that the state proved by a preponderance of the evidence that Burton made a knowing, intelligent, and voluntary waiver of his Fifth Amendment rights and that his confession was voluntary under the Due Process Clause. Consequently, the trial court did not err in denying his motion to suppress his statement, and we overrule his first assignment of error.
 III. Validity of the Search Warrant {¶ 15} In his second assignment of error, Burton contends that the trial court erred in denying his motion to suppress evidence found in the residence on Gloss Avenue. He argues that the search warrant was fatally deficient. He points out *Page 6 
that the warrant and the supporting affidavit had the wrong zip code, and that confusion existed as to the premises to be searched. This assignment of error is not well taken.
 {¶ 16} A search warrant and its supporting affidavit must particularly describe the place to be searched.[11] An incorrect address does not invalidate a search warrant where the warrant contains a sufficient description and no possibility exists that the police would search the wrong property.[12] The determining factors are whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether a reasonable probability exists that the officers might mistakenly search another premises that is not the one intended in the warrant.[13]
 {¶ 17} The search warrant and the affidavit stated that the property to be searched was "3146 #A Gloss Avenue, Cincinnati, Ohio 45207." The warrant and affidavit also described the property as "a brick, two family dwelling with four windows facing Gloss Avenue. The numbers and letter `3146 A' are black in color and located above the glass entry door. Entry into the target apartment is made through the second door on the east side of the building along the driveway."
 {¶ 18} The only problem in the warrant was the incorrect zip code. As the trial court noted, the other information was correct and only one Gloss Avenue existed with that particular building number. Consequently, the evidence showed that little danger existed that the police would search the wrong residence. *Page 7 
 {¶ 19} Burton also contends that confusion existed about the address in the affidavit and warrant. The record shows that the bill of particulars and some other documents used different street names such as "Glass Avenue" and Gross Avenue." Burton's counsel argued this issue extensively at the hearing on the motion to suppress. But the address, except for the zip code, and the description of the building in the warrant were correct. The incorrect street names in the bill of particulars and other later documents were irrelevant to the issue of whether the search warrant was fatally deficient.
 {¶ 20} We cannot hold that the search warrant was fatally deficient for failing to particularly describe the place to be searched. Consequently, we overrule Burton's third assignment of error.
 IV. Ineffective Assistance of Counsel {¶ 21} In his third assignment of error, Burton contends that he was denied the effective assistance of counsel. Burton's counsel asked the trial court to reconsider its denial of his motion to suppress. At a hearing on that motion, she presented a transcript of the confidential informant's testimony. The trial court denied the motion to reconsider. Burton argues that counsel's failure to present the informant's live testimony constituted ineffective assistance of counsel. This assignment of error is not well taken.
 {¶ 22} The record shows that Burton's counsel was zealous in her representation. It does not show that the informant's live testimony would have resulted in a different outcome. Burton has not demonstrated that his counsel's representation fell below an objective standard of reasonableness or that, but for counsel's unprofessional errors, the result of the proceeding would have been *Page 8 
otherwise. Therefore, he has failed to meet his burden to show ineffective assistance of counsel.[14] We overrule his third assignment of error.
 V. Sentencing {¶ 23} Finally, in his fourth assignment of error, Burton contends that his sentences were contrary to law. First, he argues that the sentences were excessive. We disagree. The two counts of trafficking in cocaine were second-degree felonies, and the count of possession of cocaine was a third-degree felony. All the sentences were in the appropriate statutory range, [15] and Burton has failed to demonstrate that the trial court abused its discretion in imposing them.[16]
 {¶ 24} Next, Burton argues that his convictions for trafficking in cocaine under R.C. 2925.03(A)(2) and possession of cocaine under R.C. 2925.11(A) should have been merged for sentencing. We agree. InState v. Cabrales, [17] the Ohio Supreme Court held that these two offenses are allied offenses of similar import.[18] In this case, they were not committed separately or with a separate animus as to each. Therefore, Burton could have been convicted of only one of the offenses.[19]
 {¶ 25} The state argues that Burton failed to raise the issue in the trial court and that he has failed to demonstrate plain error because the court ordered the sentences to run concurrently.[20] But this court has held that imposing concurrent sentences when offenses should have been merged is plain error.[21] *Page 9 
 {¶ 26} Consequently, we sustain Burton's fourth assignment of error. We vacate the sentences imposed and remand the case to the trial court to enter a single conviction under either R.C. 2925.03(A)(2) or R.C. 2925.11(A). We do note that trafficking in cocaine under R.C. 2925.03(A)(1) and possession of cocaine under R.C. 2925.11(A) are not allied offenses of similar import.[22] Therefore, Burton may be sentenced on both the R.C. 2925.03(A)(1) count and one of the other two counts, for a total of two sentences.[23] We affirm the trial court's judgment in all other respects. Judgment affirmed in part, sentences vacated, and cause remanded.
HENDON, P.J., and CUNNINGHAM, J., concur.
[1] (1966), 384 U.S. 436, 86 S.Ct. 1602.
[2] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, ¶ 8; State v. Taylor, 174 Ohio App.3d 477, 2007-Ohio-7066,882 N.E.2d 945, ¶ 11.
[3] State v. Eley, 77 Ohio St.3d 174, 178, 1996-Ohio-323,672 N.E.2d 640; State v. Slaughter (Apr. 28, 2000), 1st Dist. No. C-980702.
[4] State v. Edwards (1976), 49 Ohio St.2d 31, 37-38, 358 N.E.2d 1051, vacated as to death penalty (1978), 438 U.S. 911, 98 S.Ct. 3147;Slaughter, supra.
[5] State v. Dailey (1990), 53 Ohio St.3d 88, 559 N.E.2d 459, paragraph two of the syllabus; Slaughter, supra.
[6] Dailey, supra, at 91, quoting Moran v. Burbine (1986),475 U.S. 412, 422-423, 106 S.Ct. 1135.
[7] Lego v. Twomey (1972), 404 U.S. 477, 489, 92 S.Ct. 619;Slaughter, supra.
[8] Edwards, supra, at paragraph two of the syllabus.
[9] Colorado v. Connelly (1986), 479 U.S. 157, 167, 107 S.Ct. 515;State v. Combs (1991), 62 Ohio St.3d 278, 285, 581 N.E.2d 1071;Slaughter, supra.
[10] See United States v. Gannon (C.A.8, 2008), 531 F.3d 657, 661-662;Thompson v. Haley (C.A. 11, 2001), 255 F.3d 1292, 1297; United States v.Jones (C.A.11, 1994), 32 F.3d 1512, 1517; Allen v. McCotter (C.A.5, 1986), 804 F.2d 1362, 1364.
[11] Crim. R. 41(C).
[12] State v. Jones, 6th Dist. Nos. L-00-1231, L-00-1232, and L-00-1233, 2003-Ohio-219, ¶ 74; State v. Dore (1992),79 Ohio App.3d 466, 468-469, 607 N.E.2d 553; State v. Hurt (Feb. 9, 1981), 2nd Dist. No. 1161.
[13] State v. Scott, 7th Dist. Nos. 02 CA 108 and 02 CA 123, 2003-Ohio-5011, ¶ 21-22; State v. Smith, 9th Dist. No. 21069, 2003-Ohio-1306, ¶ 17-19; State v. Pruitt (1994),97 Ohio App.3d 258, 260, 646 N.E.2d 547.
[14] See Strickland v. Washington (1984), 466 U.S. 668, 687-689,104 S.Ct. 2052; State v. Hirsch (1998), 129 Ohio App.3d 294, 314-315,717 N.E.2d 789.
[15] R.C. 2929.14(A)(2) and (3).
[16] State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus; State v. Smith, 1st
Dist. No. C-060991, 2008-Ohio-2561, ¶ 17-19.
[17] 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181.
[18] Id. at paragraph two of the syllabus.
[19] See id. at ¶ 14; State v. Lanier, 1st Dist. No. C-080162, 2008-Ohio-6906, ¶ 19.
[20] See State v. Underwood (1983), 3 Ohio St.3d 12, 13,444 N.E.2d 1332; State v. Salaam, 1st Dist. Nos. C-070385 and C-070413, 2008-Ohio-4982, ¶ 25.
[21] State v. Moore, 1st Dist. No. C-070421,2008-Ohio-4116, ¶ 10; State v. Fields (1994), 97 Ohio App.3d 337,347-348, 646 N.E.2d 866. See, also, State v. Gilmore, 1st
Dist. Nos. C-070521 and C-070522, 2008-Ohio-3475, ¶ 16-17.
[22] Cabrales, supra, at ¶ 29.
[23] See Lanier, supra, at ¶ 19. *Page 1