# United States Court of Appeals for the Fifth Circuit

---

No. 24-40525

CONSOLIDATED WITH

No. 24-40527

---

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2025

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

GERARDO VILLARREAL,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 7:12-CR-7-1, 7:23-CR-1250-4

---

Before JONES and ENGELHARDT, *Circuit Judges*, and SUMMERHAYS, *District Judge*.*

KURT D. ENGELHARDT, *Circuit Judge*:

During a traffic stop, officers seized a handgun from the vehicle Gerardo Villarreal was driving. Because the handgun would have inevitably

---

* United States District Judge for the Western District of Louisiana, sitting by designation.

24-40525
c/w No. 24-40527

been discovered during an inventory search of the vehicle, we affirm the district court's denial of Villarreal's motion to suppress.

I.

On August 21, 2023, Hildago County Sheriff's Deputy Jaime Garcia pulled Villarreal over for driving with a partially obscured license plate, in violation of Texas Transportation Code § 504.945. Deputy Garcia discovered that Villarreal did not have a driver's license or insurance. Deputy Garcia asked Villarreal questions related and unrelated to the stop and conducted a computer check of Villarreal's information. Approximately fifteen minutes into the stop, Deputy Garcia began writing Villarreal a ticket for driving without a license and insurance. At Deputy Garcia's request, Villarreal consented to an open-air canine sniff of the vehicle. The canine entered the open driver's door and alerted to a baseball cap in the backseat. Officers then searched the vehicle and found a handgun and a bag containing 0.44 grams of cocaine.

A grand jury indicted Villarreal, in relevant part, for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Villarreal moved to suppress the handgun recovered from the vehicle.

The district court held a hearing on the motion to suppress. Deputy Garcia testified that pursuant to department policy, the vehicle would have been impounded because Villarreal did not have a license or insurance, regardless of whether he was arrested. When a driver does not have a license or insurance, the department usually impounds the vehicle unless there is another licensed driver, a child in the car, it is raining, or the officer determines another circumstance warrants not impounding the vehicle. While Deputy Garcia has never let a person without a license drive away without impounding, other deputies have. Before impounding, an officer would have conducted an inventory search to ensure that the department

2

would not be responsible for any items left in the car that are later claimed missing. During an inventory search, officers may search the inside of the car and the trunk, but department policy prohibits officers from searching any locked compartments. Deputy Garcia testified that an officer would have found the handgun during an inventory search. For impeachment purposes, Villarreal introduced a traffic ticket from an incident where Deputy Garcia cited someone else for driving without a license and insurance but did not impound the vehicle. Deputy Garcia did not remember issuing that particular ticket but responded, as he previously stated, that he would not impound a car if there was another licensed driver or other special circumstance making impoundment inappropriate.

The court denied the motion to suppress based on the inevitable-discovery doctrine, finding that an inventory search would have revealed the handgun. Villarreal conditionally pleaded guilty to the felon-in-possession-of-a-firearm charge and preserved his right to appeal the suppression ruling.

## II.

When reviewing a district court's ruling on a motion to suppress, we review factual findings, including credibility determinations, for clear error and legal conclusions *de novo*. *United States v. Walker*, 49 F.4th 903, 906 (5th Cir. 2022). We review the evidence in the light most favorable to the prevailing party—here, the Government. *Id.* And we "uphold a district court's denial of a suppression motion if there is any reasonable view of the evidence to support it." *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018) (internal quotation marks and citation omitted).

## III.

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. "Warrantless searches and seizures are 'per se unreasonable unless they fall within a few narrowly defined

exceptions.'" *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002) (quoting *United States v. Roberts*, 274 F.3d 1007, 1011 (5th Cir. 2001)). Evidence obtained in "'substantial and deliberate' violation of the Fourth Amendment will be suppressed and excluded from consideration." *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

Villarreal first argues that the stop, while initially justified by his violation of state law, was unconstitutionally prolonged. *See United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006) (stating that a traffic stop must last no longer than necessary for the officer to verify or dispel the suspicion for which he stopped the driver unless further reasonable suspicion emerges). Because we find that, regardless of the duration of the stop, the evidence would inevitably have been discovered during an inventory search of the vehicle, we decline to address whether the stop was prolonged. *See United States v. Jackson*, 596 F.3d 236, 242 (5th Cir. 2010) (declining to consider the legality of a warrantless search because the inevitable-discovery doctrine applied).[1]

The inevitable-discovery doctrine provides that "otherwise suppressible evidence will be admitted if that evidence would inevitably have been discovered by lawful means." *Walker*, 49 F.4th at 909 (citation modified). The doctrine "applies if the Government demonstrates by a preponderance of the evidence that (1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct and (2) the Government was actively pursuing a substantial alternate line of investigation at the time of the constitutional

---

[1] We also do not address whether the canine's entry into the vehicle was constitutional because Villarreal did not raise that issue in this court. *See United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010).

violation." *United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008). Improperly obtained evidence "should not be suppressed if it would have been discovered pursuant [to] normal police practices." *United States v. Ochoa*, 667 F.3d 643, 650 (5th Cir. 2012).

## A.

There is a reasonable probability that the handgun would have been discovered during an inventory search of the vehicle. An inventory search is an exception to the Fourth Amendment's warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "[A]n inventory search of a seized vehicle is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012) (quoting *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999)). Such policies must "sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." *United States v. Andrews*, 22 F.3d 1328, 1336 (5th Cir. 1994). A department's policy need not be written, and an officer's "unrebutted testimony is sufficient to establish that he acted in accordance" with the policy. *United States v. Bullock*, 71 F.3d 171, 177–78 (5th Cir. 1995).

By the time Deputy Garcia began writing Villarreal's citation, he had determined that, according to department policy, he would impound the vehicle—and therefore it would be inventory searched. While there are some circumstances in which a vehicle is not impounded—another licensed driver, kids in the car, or rain—none of those circumstances were present. Deputy Garcia testified that he would have impounded the vehicle, and the district court found his testimony credible.

Villarreal argues that the department had no standard impound policy because (1) officers can decide not to impound based on "whatever [he or she] want[s]" and (2) Deputy Garcia did not impound after ticketing another driver for not having a license. Villarreal fails to show the district court clearly erred. First, Deputy Garcia's testimony established that department policy generally required cars to be impounded when the driver did not have a license, although officers could exercise discretion to not impound cars in some circumstances. Because Deputy Garcia always impounds cars when, as here, no special circumstances are present, and had already decided to impound the vehicle Villarreal was driving, it was reasonably probable that an inventory search would have occurred. Second, the ticket Deputy Garcia issued the other driver did not refute his testimony because, as he explained, a circumstance in which he does not impound might have been present, such as another licensed driver in the vehicle.

Deputy Garcia testified that the department performs inventory searches prior to impounding to avoid liability for valuable items in the car. This is a proper inventory-search purpose. *McKinnon*, 681 F.3d at 209. And because department policy prohibits officers from opening locked compartments, the policy sufficiently limited the officers' discretion. *See United States v. Gray*, 824 F. App'x 258, 260 (5th Cir. 2020) ("[E]ven a slight constraint on the officer's discretion"—such as prohibiting an officer from opening locked compartments and damaging property—"is enough to deprive him of the unfettered discretion that the Court . . . found to be constitutionally deficient." (internal quotation marks and citations omitted)). It was reasonably probable that the handgun would have been discovered in an inventory search, regardless of any alleged misconduct.

24-40525
c/w No. 24-40527

B.

Villarreal argues that the Government failed to prove the second prong—that it was actively pursuing an alternate line of investigation at the time of the alleged misconduct. We disagree.[2]

The inevitable discovery of evidence cannot be speculative; it must be supported by "demonstrated historical facts." *Nix v. Williams*, 467 U.S. 431, 444 n.5 (1984). "[T]he alternate means of obtaining the evidence must at least be in existence and, at least to some degree, imminent, if yet unrealized." *United States v. Cherry*, 759 F.2d 1196, 1205 n.10 (5th Cir. 1985).

Prior to any alleged misconduct, Deputy Garcia had already determined to impound the vehicle, so an inventory search was imminent. Before the canine sniff and vehicle search, Deputy Garcia had begun writing a ticket for driving without a license and insurance—a prerequisite to impounding. *See United States v. Seals*, 987 F.2d 1102, 1108 (5th Cir. 1993) (applying the inevitable-discovery doctrine when the officer "had already decided to impound the vehicle[] and had begun the necessary paperwork" prior to the misconduct). While the Government may not "later initiate a lawful avenue of obtaining the evidence and then claim that it should be admitted because its discovery was inevitable," Deputy Garcia was actively pursuing impoundment. *See Cherry*, 759 F.2d at 1205–06 (citation omitted) (finding no alternate line of investigation because officers had not sought a warrant at the time of the warrantless search). Villarreal argues that Deputy Garcia had not begun impounding the car because he had not checked the

---

[2] This court has "suggested that the second element of the inevitable discovery rule may be superfluous." *United States v. Salinas*, 543 F. App'x 458, 467 (5th Cir. 2013). But we "need not address the continuing vitality of the active-pursuit element" because it is established here. *Jackson*, 596 F.3d at 242; *United States v. Lamas*, 930 F.2d 1099, 1104 (5th Cir. 1991) (declining to address active-pursuit element because it was not dispositive).

"impound" box on the citation.    But we refuse to "mechanically particularize the steps prerequisite to the application of the inevitable-discovery rule." *Lamas*, 930 F.2d at 1103 (refusing to require an officer to complete certain steps in getting a warrant to apply the inevitable-discovery doctrine).  The district court did not clearly err in finding impounding and an inventory search imminent.

## IV.

Accordingly, we AFFIRM the district court's judgment.